[Crim. No. 32729. Second Dist., Div. Three. July 27, 1978.]

In re JOHN S., a Minor, on Habeas Corpus.

**COUNSEL**

Wilbur F. Littlefield, Public Defender, Dennis A. Fischer, Kenneth I. Clayman, Jerry A. Weil and Albert J. Menaster, Deputy Public Defenders, for Petitioner.

John K. Van de Kamp, District Attorney, Donald J. Kaplan and Maurice H. Oppenheim, Deputy District Attorneys, for Respondent.

**OPINION**

**POTTER, J.**—This is a habeas corpus proceeding in which petitioner John S. seeks to test the validity of a juvenile court order which requires him, as a condition of probation, to spend between five and ten days custodial time in juvenile hall.

On March 29, 1978, a petition was filed alleging that John S. was a person within the provisions of section 602 of the Welfare and Institutions Code[1] because he committed four acts in violation of Penal Code section 459 (burglary), as detailed in counts I through IV of the petition. John appeared in court on April 19, 1978, and admitted counts I and II, at which time the other two counts were dismissed "based on minor's admission to Counts I & II."

The disposition hearing was held on May 10, 1978. The report of the probation officer was submitted and taken into consideration by the court. In brief, the report indicated that John (who was 14 years of age at the time of the report) had been arrested once 2 years prior to this offense and once since the proceedings were instituted. The first action was "suspended" and the most recent, which involved a Penal Code section 211 charge (robbery), was rejected by the district attorney on the ground that it resulted from an illegal arrest. The report detailed John's school record which included 41 days absence out of 118 days, and stated that minor was "involved in several fights on campus and that the minor is a quiet student but defiant." Both the minor and his parents claimed that his "school problems have been racial in nature," the minor "is small in stature and is a minority in his school and gets harassed and pushed around by Mexican and Negro peers," and "usually fights in self-defense." The report stated that John's present teacher, in guidance classes, thought that he was doing "extremely well." Also reported was the opinion of a Long Beach police officer that home on probation would be a suitable disposition. The minor's family was said to be "close-knit," one that "strives to maintain stability," and the father was described as a "fair but firm disciplinarian . . . [who] apparently has few problems with the children at home."

The probation officer felt that the minor had begun to "establish a serious delinquent pattern" but that he was "remorseful" and "sufficiently impressed by his involvement in the court process to discontinue this delinquent activity." The probation officer recommended that John be declared a ward of the court and that he be permitted to remain in the home of his parents while under the supervision of a probation officer.

The court, after listening to counsel's objection to the imposition of any amount of custodial time and after indicating that the probation officer's report had been read, stated its ruling as follows:

---

[1]Unless otherwise indicated, all statutory references are to the Welfare and Institutions Code.

"I took into consideration those parts of the probation report that you have referred. But all things considered, *I feel that one of the things that the minor is going to have to learn as far as his probation and his rehabilitation is the responsibility that he is going to have to take for his activity.* Now, the attitude that has been exhibited in this particular case, and that is the attitude with reference to school, he has had school difficulties even though apparently now he is attending. They make reference to his attitude at school. He is disruptive, continually involved in some type of disruption and fighting. *I think all things considered that the custodial time at Juvenile Hall is going to be therapeutic. I am not considering it punitive at all. It is going to be therapeutic in the sense that this individual has involved himself in a heavy type activity. I want him to get some idea of what is in store for him on a much longer term basis should he involve himself in such activity in the future.*

"Part of the activity he has involved himself in together with the large losses that have been sustained by these victims, part of it is his attitude that has been exhibited in school and has been referred to in the probation report. Part of it also, that he has been involved in other incidents which were not sustained but which were involvements and which didn't seem to deter him from the activity starting in February, 1978. *All things considered, I will just indicate that I am not doing this on a punitive basis at all, but I think it is a definitely therapeutic aspect for this minor to see what the inside of a custodial place looks like and to know what is in store for him.* If I wanted to be punitive, I would give him 30 days. Five days is rather minimal considered against the type of activity that has occurred here.

"The minor is declared a ward of the Court under Section 602 of the Welfare and Institutions Code. The minor is permitted to remain in the home of his parents. The minor's care, custody, control and conduct is placed under the supervision of the probation officer under the following terms and conditions:

"`.`      .      .      .      .      .      .      .      .      .      .      .      .      .      .

"Condition thirty-eight, the minor is to spend not less than five nor more than ten days in custodial time in Juvenile Hall." (Italics added.)

The box in the minute order form which is customarily used to indicate that the court has made a finding that the minor's welfare requires that he be removed from his parents' custody was not checked.

The petition in this court did not include a transcript of the oral proceedings at the disposition hearing. In the absence of any record of an appropriate finding, we issued an order to show cause.

## CONTENTIONS

Petitioner contends that: (1) the court made no finding in the record which would support an order removing him from the custody of his parents, as section 726 requires; (2) if such a finding were made, it would not be supported by substantial evidence; and (3) the confinement in juvenile hall was not imposed as "an alternative" to a more restrictive disposition and was, therefore, punitive.

The People contend that: (1) section 726 does not apply to short commitments to juvenile hall which do not "cause a meaningful interference with the parental right to control"; (2) the transcript of all the proceedings showed that the court did find that the welfare of the minor required that the custody of the minor be thus temporarily taken from his parents; (3) the record supports this finding; and (4) the custodial order was not punitive.

## DISPOSITION

*Summary*

The imposition of a condition of probation committing petitioner to temporary confinement in juvenile hall takes a minor "from the physical custody of a parent or guardian" and requires a finding pursuant to section 726. Such finding need not, however, be in the exact words of that section as long as the substance of such a finding appears in the record. The substance of a finding that the welfare of the minor requires the temporary custody does appear in the record, and such a finding is supported by the evidence. There is, moreover, no basis for petitioner's claim that the commitment is punitive.

■ *Any Disposition Order Imposing Custody*
*Requires Findings Pursuant to Section 726*

Section 726 reads in pertinent part:

"[B]ut no ward or dependent child shall *be taken from the physical custody of a parent or guardian* unless upon the hearing the court finds one of the following facts:

"(a) That the parent or guardian is incapable of providing or has failed or neglected to provide proper maintenance, training, and education for the minor.

"(b) That the minor has been tried on probation in such custody and has failed to reform.

"(c) That the welfare of the minor requires that his custody be taken from his parent or guardian." (Italics added.) Language virtually identical to that italicized above appears in section 777 requiring a noticed hearing upon a supplemental petition as a condition for an order "modifying a previous order by removing a minor from the physical custody of a parent, guardian . . . ." *In re Glenn K.* (1977) 74 Cal.App.3d 342, 346 [141 Cal.Rptr. 486], decided by this division, held that a modification imposing a 15- to 30-day commitment to juvenile hall as a condition of probation "effectively removed petitioner from the physical custody of his mother" and therefore required a supplemental petition.

No reason appears for giving a different meaning to virtually identical language in section 726. We, therefore, conclude that the order must be supported by one of the findings specified in that section.

*Findings Pursuant to Section*
*726 Do Not Have to Be in the*
*Precise Language of the Section*

No finding was made by the trial court in the precise language of subdivisions (a), (b) or (c) of section 726. A similar situation was presented in *In re Ortiz* (1946) 74 Cal.App.2d 810 [169 P.2d 664]. However, the trial court which sent minors to CYA made several comments, the substance of which was that the welfare of the minors required that they be taken from the custody of their parents. These comments included statements as follows: " 'I don't think these boys will benefit by having that kind of conduct excused' " (*id.,* at p. 816), " 'the ends of justice and the protection of these boys as well as the protection of society, could better be served. . .' " (*id.,* at p. 817) and " 'I have taken what I believe to be the best course . . . as far as my own conscience is concerned and my own feeling in the matter' " (*ibid.*). In affirming the disposition, the appellate court said (*ibid*): "From the various statements which we have quoted, it is clear, as the People claim, 'that the court found as a fact that the welfare of these boys required that they be taken from the custody of their parents, in order that they receive training in

better conduct and habits, which would not be afforded them in the environment in which they had been living, in order to avoid future trouble, and in the case of the appellant, also because his parents were going out of the state and the court believed that the machinery for taking care of minors was better in this jurisdiction than it would be in another.' "

*In re Ricardo M.* (1975) 52 Cal.App.3d 744 [125 Cal.Rptr. 291], approved an order imposing a brief commitment to juvenile hall as a condition of probation. Again there was no express finding in the language of any subdivision of section 726. However, the trial court did make an oral reference to the fact that "the prior record was the reason for imposing the condition of probation." (*Id.,* at p. 750.) This court said (*ibid.*): "That notation *satisfies the substance of a finding* that Ricardo failed on probation and that continued uninterrupted physical custody of Ricardo by his parent would be detrimental to him. Thus the conditions of subdivision (b) of Welfare and Institutions Code section 726 are found present and the subdivision permits the imposition of the condition." (Italics added.)

A dictum to the same effect appears in *In re Willy L.* (1976) 56 Cal.App.3d 256 [128 Cal.Rptr. 592]. Referring to the "requisite findings required under said section 726, subdivision (c), . . . that the welfare of the minor requires that his custody be taken from his parent or guardian" (*id.,* at p. 265), the court said: "[s]uch requisite finding may be inferred from the transcript in lieu of entry in the minute order" (*id.,* at p. 266).

Consequently, the absence of a formal minute order entry in the language of section 726 is not determinative. If the transcript of the proceedings shows "the substance of a finding" (52 Cal.App.3d at p. 750) within that section, it is sufficient.

■ *The Substance of a Finding Pursuant*
*to Section 726, Subdivision (c),*
*Appears in the Reporter's Transcript*

The transcript of the judge's comments announcing the ruling shows clearly that he found in substance that the welfare of the minor required that his custody be taken from his parent or guardian for the brief period specified in condition 38. It is apparent that the trial court had in mind the statement in *In re Ricardo M., supra,* 52 Cal.App.3d at page 749, as to the proper purpose of such a commitment, as follows: ". . . Its purpose is

to demonstrate to the minor the road to which continuation of delinquency will lead while at the same time preserving family ties which are the best of all possible means of bringing the child to productive adulthood. It seeks to avoid the unkind leniency which all too often leads the juvenile to further and more aggravated violations of law and consequently to a continuum of more severe treatment through camp and youth authority commitment to a sentence of state prison by a felony court."

The trial court's statements in the transcript show that the custody was considered necessary to save the minor from the consequences of his failure to appreciate the seriousness of such "heavy type activity" as he had engaged in. The order was an attempt to avoid the unkind leniency which might lead the minor into deeper difficulty by having the minor "see what the inside of a custodial place looks like and to know what is in store for him." The court's statement that the commitment would be "definitely therapeutic" and "that one of the things that the minor is going to have to learn as far as his probation and his rehabilitation is the responsibility that he is going to have to take for his activity" is in substance a finding that the welfare of the minor requires that custody be taken from his parents for the brief period necessary to bring home this point.

■ *Substantial Evidence Supports the Court's "Welfare" Finding*

The standard for review of the findings of the juvenile court upon which a disposition is based is stated in *In re Clarence B.* (1974) 37 Cal.App.3d 676, 682 [112 Cal.Rptr. 474], as follows: "It is well settled in California that when a public offense has been committed by a juvenile, certification of the juvenile to the CYA is within the sound discretion of the committing court, be it the juvenile court (Welf. & Inst. Code, §§ 731, 1736) or the superior court (Welf. & Inst. Code, § 1731.5). (See *In re Dale S.,* 10 Cal.App.3d 952, 957 [89 Cal.Rptr. 499]; *People* v. *Moran,* 1 Cal.3d 755, 762 [83 Cal.Rptr. 411, 463 P.2d 763]; *People* v. *Woolbert,* 232 Cal.App.2d 544, 547 [42 Cal.Rptr. 919].) The decision of the juvenile or superior court may be reversed on appeal only upon a showing that the court abused its discretion in committing the minor to the CYA. (See *In re Dale S., supra,* at p. 957; *People* v. *Hutson,* 221 Cal.App.2d 751, 754 [34 Cal.Rptr. 790].) A reviewing court must indulge in all reasonable inferences to support the findings of the juvenile court, and such findings

will not be disturbed on appeal when there is substantial evidence to support them. (*In re Schubert,* 153 Cal.App.2d 138, 143 [313 P.2d 968].)"

Reviewing the record with this standard in mind, we find it amply supports the court's findings that the welfare of the minor requires the brief commitment imposed. Though this was the first adjudication of the minor, the charges in the petition involved serious involvement in continuous criminal activity of a serious nature. There was evidence that the minor was taking steps in the direction of better performance at school and was contrite. But his subsequent involvement in a robbery incident which did not result in prosecution only because an illegal arrest was involved justified the court in believing that on his probation the minor's rehabilitation was not going to be advanced by subjecting him to "unkind leniency." The court's evaluation of the minor's needs was fully supported by the evidence and did not constitute an abuse of discretion.

### The Commitment Is Not Punitive

Petitioner's argument that the temporary commitment is punitive is based on the assumption that *In re Ricardo M.* requires such commitments be "imposed as an alternative to the more serious measure of commitment to a juvenile camp." (52 Cal.App.3d at p. 749.) *Ricardo M.* simply noted that such was the fact in that case. It by no means follows that without such a determination any juvenile hall custodial condition of probation is punitive.

The Juvenile Court Law, of course, does not permit punitive orders (*In re Michael R.* (1977) 73 Cal.App.3d 327, 337 [140 Cal.Rptr. 716]; *In re J.L.P.* (1972) 25 Cal.App.3d 86, 89 [100 Cal.Rptr. 601]) but, as amended in 1976, Welfare and Institutions Code section 502 (now § 202) expressly acknowledges that a purpose of the Juvenile Court Law is "to impose on the minor a sense of responsibility for his own acts." This amendment, made subsequent to the decision in *Ricardo M.,* recognizes the propriety of the purpose stated in the opinion in that case. Furthermore, by expressly acknowledging the purpose "to impose on the minor a sense of responsibility for his own acts" as a legitimate objective of the Juvenile Court Law, the Legislature has determined that such imposition is not punishment.

Petitioner relies upon the decision of this division in *In re Michael R., supra,* 73 Cal.App.3d 327, in which a CYA commitment was invalidated on the ground that it was based solely upon the seriousness of the offense

and without consideration of less onerous alternatives. However, in that case this court said (*id.,* at·p. 340): "All we hold is that the juvenile court must consider each individual case on its merits without a mechanized approach based solely on the seriousness of the offense and must evaluate the appropriateness of the available lesser alternative dispositions in light of the purposes of the Juvenile Court Law."

The trial court acted in accordance with this directive. The disposition "Home on Probation" was virtually the least restrictive disposition available, and it is apparent that the judge considered the alternative of omitting any condition imposing custody. That alternative was rejected for the valid reason that under the circumstances it would be an "unkind leniency" which would in all probability lead the minor "to further and more aggravated violations of law and consequently to a continuum of more severe treatment through camp and youth authority commitment to a sentence of state prison by a felony court." (*In re Ricardo M., supra,* 52 Cal.App.3d at p. 749.) Such disposition on that basis was not punitive and was fully authorized by express language of the governing legislation.

DISPOSITION

The petition for writ of habeas corpus is denied; the stay issued by this court on June 8, 1978, is vacated.

Klein, P. J., and Allport, J., concurred.

A petition for a rehearing was denied August 15, 1978, and petitioner's application for a hearing by the Supreme Court was denied September 20, 1978. Bird, C. J., and Newman, J., were of the opinion that the application should be granted.